**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

**KASOWITZ BENSON TORRES LLP**
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel: (973) 645-9462
Fax: (973) 643-2030

June 29, 2018

VIA ECF

Hon. Michael A. Shipp, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Federal Building
402 E. State Street
Trenton, New Jersey 08608

> Re:  *The Boeing Company Employee Retirement Plans Master Trust and the Boeing Company Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International Inc., et al*, No. 17-cv-07636(MAS)(LHG)

Dear Judge Shipp:

We represent Plaintiffs in the above-referenced action (the "Action") and write in response to Defendants' June 20, 2018 letter, which requests that the Court take judicial notice of "developments" in the criminal trial of former Valeant executive Gary Tanner and former Philidor co-founder and Chief Executive Officer Andrew Davenport.  For the reasons outlined herein, Defendants' request should be denied.

In their letter, Defendants ask this Court to draw sweeping fact conclusions based on their superficial description of a guilty verdict in a wholly separate criminal trial. Defendants' request is improper on a motion to dismiss, and the criminal proceedings do not support their claim that the verdict is "irreconcilable" with Plaintiffs' RICO allegations because "a jury has now found that Tanner and Davenport concealed Philidor-related misconduct from Valeant." On the contrary, the record developed during the criminal trial overwhelmingly supports Plaintiffs' RICO claims.

If the Court looks past Defendants' self-serving characterizations, it will find that the "Philidor-related misconduct" directly at issue in the criminal trial is only tangentially related to Plaintiffs' allegations. The jury determined that Tanner hid from Valeant a $9.7 million "kickback" he received from Davenport, and was inspired by the kickback to work against Valeant's stated interest.  Judge Preska, who presided over the trial, fastidiously kept out nearly all evidence that was not directly related to this question, and specifically excluded mention of misconduct at Valeant at the heart of these and the other civil actions. *See, e.g.,* Ex. A (Trial Tr.

June 29, 2018
Page 2

at 163:15-166:13, *United States v. Tanner*, 17-cr-0061 (LAP) (S.D.N.Y. May 3, 2018))
(precluding defense counsel from arguing that Valeant wanted to keep its relationship with
Philidor secret).

Though it was not directly before the jury, a great deal of evidence emerged during the
proceedings that supports Plaintiffs' RICO allegations. For example, the proceedings revealed
that Laizer Kornwasser, Valeant's then Executive Vice President and Group Chairman
("Kornwasser"), who oversaw Philidor and reported directly to Valeant's CEO, Michael Pearson
("Pearson"), became so concerned about Valeant's relationship with Philidor—and his role in
that relationship—that he began documenting his concerns in secretly recorded conversations
with Pearson. Only a portion of one recorded conversation, however, was played at trial.

In one of these secretly recorded conversations, in September 2014, Kornwasser
expressed concern to Pearson that Valeant was stuffing the Philidor channel with drugs to meet
sales goals. Ex. A (Trial Tr. at 890:25-891:4). Pearson questioned Kornwasser's concern about
the practice, saying ***"It seemed a little out of character for you, if you know what I mean."*** And
Kornwasser responded, "***Yeah. I'll be aggressive on stuff.*** This is one where like, for example,
like this buy, where Philidor's going to take 22 pallets, their inventory room doesn't have room
for three pallets. ***And so it's one of those things where if it were ever to be exposed, it just
doesn't feel -- it just doesn't feel right.***" Ex. A (Trial Tr. 891:2-892:8) (emphasis added). This
evidence—that Pearson knew of and approved channel stuffing—supports Plaintiffs' allegations
that Valeant and its top executives were driving the improper conduct occurring at Valeant and
Philidor. *See, e.g., Amended Compl.* ¶¶ 337, 340, *Lord Abbett Inv. Trust-Lord Abbett Short
Duration Income Fund, et al. v. Valeant Pharm. Int'l, Inc., et al.*, No. 3:17-cv-06365 (D.N.J.
Feb. 23, 2018), ECF No. 88 ("*Lord Abbett* Compl.")[1] ("Thus, Pearson encouraged the
manipulation of revenue recognition by requiring his employees to meet aggressive revenue
targets. In doing so, he recklessly disregarded that he had established a corporate culture that
facilitated channel stuffing."). However, deeming it irrelevant to the criminal trial, Judge Preska
prevented defense counsel from discussing channel stuffing with the jury. *See, e.g.,* Ex. A (Trial
Tr. 162:13-14) ("I understand that but I don't want to hear channel stuffing again.").

Channel stuffing was not Kornwasser's only concern. He was also worried that Valeant's
reliance on Philidor exposed Valeant to payor risk, that Valeant had "all their eggs in one
basket," and that if Philidor had trouble with the PBMs, it would impact Valeant as a whole—a
concern he raised with Pearson and other executives. *See, e.g.,* Ex. A (Trial Tr. 950:22-951:24,
997:1-17). Kornwasser further testified that in November of 2013 he personally visited Philidor,
along with another Valeant executive, Deborah Jorn. As a result of that visit, Kornwasser was so
"concerned about what [he] saw" from an "independence perspective" and a "compliance
perspective" that he "***went straight back to Valeant***" to "***make sure [he] told the proper
executives.***" Ex. A (Trial Tr. 937:15-22). In the fourth quarter of 2014, his concerns would
compel him to tape conversations he had with Pearson. Ex. A (Trial Tr. 997:16-22; 998:1-2, 12-
17). When asked why he taped the conversation with Pearson in September of 2014,
Kornwasser responded that "***there were some issues that had concerned me with Valeant; and
although I had highlighted those concerns to the CEO, to the CFO, to general counsel, to***

---

[1] For consistency, Plaintiffs refer to the paragraph citations in the *Lord Abbett* Complaint, as the parties did in the
omnibus motion to dismiss briefing.

June 29, 2018
Page 3

*compliance, I felt the need that I needed to document those concerns properly*." Ex. A (Trial Tr. 998:1-2, 12-17).

      Ultimately, Kornwasser was so concerned about Valeant's improper relationship with Philidor, and the risks he felt Philidor posed to Valeant, that he refused to sign the purchase option agreement. *See, e.g.,* Ex. A (Trial Tr. 997:1-17). In response, Pearson was "unhappy with" him, removed him from his role overseeing Philidor and Tanner, and went through with the Philidor deal anyway. *Id.* According to Kornwasser, following this episode, ***beginning in December of 2014, Pearson personally oversaw Valeant's relationship with Philidor***. *Id.*

      This evidence clearly supports Plaintiffs' RICO theory.[2]  Pearson's apparent approval of stuffing the Philidor channel to meet numbers in the fourth quarter of 2014 corroborates Plaintiffs' allegations that Valeant improperly double-booked revenue on sales to Philidor for the same reason.[3] *See, e.g., Lord Abbett* Compl. ¶¶ 144, 218-29, 411. Similarly, the fact that Pearson and other executives heard Kornwasser's warnings about independence and payor risk, yet still pursued the purchase option agreement, and then oversaw Valeant's increased reliance on Philidor throughout 2015, strongly supports Plaintiffs' allegations that Pearson and the other Valeant executives intended to conspire with Tanner and Philidor to operate a secret and risky channel for overpriced drugs and then lied about it to investors. *See, e.g., Lord Abbett* Compl. ¶¶ 317, 411.[4]  These facts confirm that there is simply nothing "irreconcilable," or even really unusual, about conspirators running a side hustle while engaging in the larger conspiracy. At most, the verdict lends support to the old adage that there is no honor among thieves.

      That the record is so contrary to Defendants' characterizations establishes at least two things:

      First, Defendants' request is not really for "judicial notice"—a doctrine reserved for facts "that [are] not subject to reasonable dispute[.]" Fed. R. Evid. 201(b). Defendants are not drawing the Court's attention to settled facts here, they are asking the Court to accept as true *some* facts from the documents they cite, along with Defendants' spin, and to use those facts to rule on a motion to dismiss. This is miles outside the bounds of the judicial notice doctrine, and Defendants' request should be rejected for that reason alone. *See, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

---

    [2] Indeed, many of those that testified or were referenced during testimony at trial, including those highlighted herein, are named in Plaintiffs' complaints as a defendant or key member of the Enterprise (as defined in Plaintiffs' complaints), including: Gary Tanner, Andrew Davenport, Laizer Kornwasser, Deborah Jorn, Valeant Comptroller Tanya Carro, Valeant CEO Michael Pearson, Valeant CFO Howard Schiller, Valeant EVP and Chairman Ari Kellen, and Valeant employee Bijal Patel.

    [3] The testimony regarding channel stuffing and improper double-booking of revenue also demonstrates defendant PricewaterhouseCoopers LLP's ("PwC") role, as it audited both Valeant and Philidor in connection with the Valeant-Philidor relationship and provided the Enterprise with the imprimatur of financial propriety.

    [4] Investors learned about the payor risk only when Philidor was exposed in the fall of 2015, payors walked away, and Valeant's sales and stock price plunged. *See, e.g., Lord Abbett* Compl. ¶ 287.

June 29, 2018
Page 4

Second, that such damning facts emerged incidental to a proceeding where they were not directly at issue suggests that a great deal more evidence supporting Plaintiffs' allegations remains to be uncovered. Indeed, only a small portion of Kornwasser's secret recordings were discussed during the trial, and Kornwasser himself testified under a grant of immunity from the government, citing outstanding investigations. *See, e.g.,* Ex. A (Trial Tr. 904). Of course, this is exactly why a motion to dismiss is limited to whether the facts pled support the claims alleged. On the face of Plaintiffs' complaint, they clearly do. The criminal trial confirms that Plaintiffs are on the right track and should be afforded full discovery on these claims. Accordingly, for the reasons stated herein, the Court should deny the requested relief in Defendants' June 20, 2018 letter, and deny their motions to dismiss.

Respectfully Submitted,


By: /s/ Serena P. Hallowell        By: /s/Stephen W. Tountas
Serena P. Hallowell              Stephen W. Tountas
LABATON SUCHAROW LLP             KASOWITZ BENSON
                                 TORRES LLP



cc: All Counsel of Record (via ECF)